United States Court of Appeals,

Eleventh Circuit.

No. 94-4553.

VARIETY CHILDREN'S HOSPITAL, INC., a Non-profit Organization d/b/a Miami Children's Hospital, Plaintiff-Appellant,

v.

CENTURY MEDICAL HEALTH PLAN, INC., a Domestic Health Maintenance Organization, Defendant-Appellee,

Wigberto Rios, an Individual, Patrica Rios, an Individual, as Parents and Natural Guardians of the Minor Child, Juan Carlos Rios, Deceased, Defendants.

July 12, 1995.

Appeal from the United States District Court for the Southern District of Florida. (No. 93-718-CIV, K. Michael Moore, Judge.

Before COX, Circuit Judge, HILL and GARZA[*], Senior Circuit Judges.

HILL, Senior Circuit Judge:

Variety Children's Hospital, Inc. ("Variety") brought a four count complaint against Century Medical Health Plan, Inc., a Domestic Health Maintenance Organization ("Century") seeking recovery of the cost of medical services provided to a patient. Count I alleges a violation of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 ("ERISA"); Counts II and III allege fraud, misrepresentation, and unfair claim settlement practices all in violation of Florida statutes regulating health maintenance organizations; and Count IV alleges a claim of promissory estoppel. Upon motion by Century, the district court dismissed Count I without prejudice subject to Variety's exhaustion of its administrative remedies. Counts II, III and IV were

[*]Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

dismissed with prejudice as preempted by ERISA.  For the following reasons, we agree.

## I. BACKGROUND

Juan Carlos Rios, a minor, suffered from acute lymphoblastic leukemia.  Over a period of two and one half years, he was admitted to Variety Children's Hospital 20 times, including his final admission on December 3, 1992.  Rios was a member/subscriber of a health maintenance organization plan issued by Century.  Each time he was admitted to Variety, Century certified him for treatment.  With the exception of his last admission, Century paid Variety in full for the child's treatment.

On his final admission, Century certified Juan Carlos for treatment.  Thereafter, doctors at Variety decided to treat Juan Carlos by bone marrow transplant and initiated high dosages of precursor chemotherapy.  Century determined that this treatment was "experimental" and not covered by the policy.  Century informed Variety of this determination and de-certified Juan Carlos for this treatment.  Nevertheless, Variety continued the treatment. Despite the aggressive treatment, Juan Carlos died.  After Century denied coverage, Variety obtained an assignment of the claims of Mr. and Mrs. Rios and sued Century in a four count complaint.

## II. ANALYSIS

A. *Count I*

Count I is a straight-forward claim under ERISA for the benefits under the plan.  Variety, however, neither pleaded nor recited facts showing that it had exhausted its administrative

remedies under the plan.[1]

We have repeatedly held that plaintiffs must exhaust their administrative remedies under a covered benefits plan prior to bringing an ERISA claim in federal court. *Byrd v. MacPapers, Inc.,* 961 F.2d 157, 160-61 (11th Cir.1992); *Springer v. Wal-Mart Associates' Group Health Plan,* 908 F.2d 897, 899 (11th Cir.1990); *Mason v. Continental Group, Inc.,* 763 F.2d 1219, 1227 (11th Cir.1985), *cert. denied,* 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986).[2] The district court's dismissal of Count I without prejudice subject to Variety's exhaustion of its administrative remedies was not error.

B. *Counts II and III*

Counts II and III allege fraud, misrepresentation and unfair claim settlement practices in violation of Florida state laws regulating health maintenance organizations. Century maintains that these claims are preempted by the ERISA claim in Count I.

The preemption provision of ERISA provides that it "shall supersede any and all state laws insofar as they may now or hereafter relate to any employment plan" covered by ERISA. 29 U.S.C. § 1144(a) (1988). A state law "relates to" a covered

---

[1]The procedure for grievances and arbitration of grievances is set out on page 33 of the health plan which is attached to Variety's Amended Complaint as Exhibit A.

[2]We agree with the district court that Variety's attempt to circumvent this requirement by alleging in its Corrected Amended Complaint that it had complied with "all conditions precedent" or in the alternative that "such conditions have been waived or excused" does not address the exhaustion requirement. Furthermore, Variety also failed to plead that exhaustion is waived because it would be futile. *See Curry v. Contract Fabricators, Inc. Profit Sharing Plan,* 891 F.2d 842, 846 (11th Cir.1990).

employee benefit plan "if it has a connection with or reference to such a plan."  *District of Columbia v. Greater Washington Bd. of Trade,* --- U.S. ----, ----, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (1992).

All of the claims alleged in Counts II and III center on the issue of coverage under the plan.  If the treatment given the child is determined to be "experimental," the plan specifically excludes coverage.  If the treatment was not experimental, the plan will cover it.  The issue of coverage under the policy remains to be resolved in this case.

We agree with the Fifth Circuit's analysis in *Hermann Hosp. v. MEBA Medical and Benefits Plan,* 959 F.2d 569, 578 (5th Cir.1992), that where state law claims of fraud and misrepresentation are based upon the failure of a covered plan to pay benefits, the state law claims have a nexus with the ERISA plan and its benefits system.  Therefore, Counts II and III were correctly dismissed as preempted.[3]

C. *Count IV*

Variety's promissory estoppel claim is based upon the initial certification of the child for treatment and the subsequent de-certification once the high-dosage chemotherapy protocol was begun.  Variety alleges that it relied upon Century's initial promise to pay for the child's treatment and suffered detriment

---

[3]We reject the argument that these claims are saved from preemption because ERISA does not preempt state insurance statutes.  *See* 29 U.S.C. § 1144(b)(2)(A).  We have held that this exception to preemption does not apply to the statutes regulating health maintenance organizations which are not considered to be insurance companies under Florida law.  *O'Reilly v. Ceuleers,* 912 F.2d 1383, 1389 (11th Cir.1990).

from Century's subsequent failure to pay.

The problem with this claim, however, is that Variety cannot have reasonably relied on the initial certification because Century subsequently de-certified the child for the allegedly experimental treatment. Variety proceeded with the treatment not in reliance upon a promise to pay, but in the face of actual knowledge that there was no promise to pay.

Variety could have relied on the promise to pay embodied in the initial certification only if Century somehow either explicitly or implicitly promised to waive the "experimental" exclusion, or if Century never withdrew its initial certification. As to the issue of waiver, there was no allegation that Century had in any way explicitly promised that it would waive that exclusion for this patient. Furthermore, the patient in this case was admitted to Variety 20 times. In his last admission, Variety determined that he was a candidate for autologous bone marrow transplantation and started him on the regimen of precursor chemotherapy. During his previous 19 admissions, he had never been selected as such a candidate, nor provided the specific treatment which Century seeks to exclude. Therefore, the previous course of dealings between these parties carried no implicit promise of waiver.

Finally, it is uncontested that Century notified Variety in a timely and responsible manner that it had determined that the protocol was experimental and the treatment was de-certified for payment.[4] It certainly cannot be the case that every initial

_____

[4]Century notified Variety subsequent to the initiation of the treatment, but prior to its conclusion.

certification for treatment obligates the plan to pay for *any* treatment that may subsequently be proposed or provided. That is the whole reason for the "experimental" exclusion. Every initial certification is subject to this exclusion. Variety chose to continue the treatment with full knowledge that it might not be covered.

Variety cannot have *reasonably* relied on the initial certification then. In fact, however, this *is* the promise upon which Variety seeks to rely. Variety's complaint alleges that it was entitled to rely on the initial certification because the treatment was "both medically necessary and in accordance with the accepted standards of medical practice for the treatment and care of relapsed, acute lymphoblastic leukemia," i.e., *not experimental.* This claim, therefore, is not really that Variety relied upon Century's promise, but that the treatment was not experimental, and the plan covered the treatment. As such, it is related to the benefits under the plan and preempted by ERISA.[5]

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

[5]This is not the case where an insurer represents to the health care provider that a specific treatment is *fully* covered under the policy and only after lengthy and expensive treatment informs the provider that the policy contains a significant limitation on that coverage. In such a case, the claim for promissory estoppel would be unrelated to the benefits under the plan and would survive the defense of preemption. *See Lordmann Enterprises, Inc. v. Equicor, Inc.,* 32 F.3d 1529 (11th Cir.1994).