**Miller B. ENGELHARDT, Plaintiff,**

v.

**PAUL REVERE LIFE INSURANCE COMPANY, et al., Defendants.**

**Civil Action No. 96–D–699–N.**

United States District Court, M.D. Alabama, Northern Division.

Nov. 6, 1996.

Dennis R. Bailey; Nicholas T. Braswell, III; Charles A. Stakely, Jr., Montgomery, AL, for plaintiff.

Mark D. Hess, Bert Nettles, Birmingham, AL, Mark E. Schmidtke, Valparaiso, IN, Clarence M. Small, Jr., Birmingham, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

This matter is now before the court on plaintiff Miller B. Engelhardt's ("Engel-

hardt") motion to remand, filed May 24, 1996, and Engelhardt's "Motion For Dismissal of Count Two Without Prejudice" filed on October 3, 1996.[1]

Filings concerning Engelhardt's motion to remand include Defendant Paul Revere Life Insurance Co.'s ("Revere") response filed on June 14, 1996, Engelhardt's supplemental brief to his motion filed on July 3, 1996, and Revere's reply filed on July 12, 1996. Revere next filed supplemental authority in support of its opposition to remand on August 28, 1996, and Engelhardt filed his response on September 6, 1996. Finally, Revere filed a supplemental brief in opposition to Engelhardt's motion to remand on September 24, 1996. Revere also filed a letter brief on October 2, 1996, and Engelhardt answered on October 3, 1996. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court finds that Engelhardt's motion to remand is due to be granted.

Revere responded to Engelhardt's motion to dismiss on October 8, 1996. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court finds that Engelhardt's motion to dismiss is due to be granted.

### Facts

This dispute arises from the purchase of a disability insurance policy ("Policy") by Montgomery Orthopaedic Surgeons, P.C. ("Surgeons"), for the four physicians in the practice and the practice's business manager. Engelhardt's Mot. Remand at 1–2; Gerald L. Gwin Aff. at 1. Defendant Montgomery was the agent who sold the Policy issued by Revere to Surgeons. Gwin Aff. at 1–2; Engelhardt Aff. at 3. The Policy became effective on July 1, 1993. Gwin Aff. at 1. At the time Surgeons applied for the Policy, Engelhardt was one of the four physicians in the practice and served as President of the group. Gwin Aff. ¶ 2. Engelhardt noted in his application that he had previously been diagnosed for glaucoma. Engelhardt Aff. 3. Engelhardt claims that following receipt of his application, Revere and Montgomery fraudulently induced him to sign an amendment to his application which excluded, among other things, "coverage for either or both eyes." Id. at 1–2, Exhibit A. Engelhardt alleges that Montgomery and Revere assured him that this exclusion would only preclude benefits for conditions resulting from glaucoma. Id. at 2. Engelhardt ultimately signed the amendment to his application on October 25, 1993. Id. at 2, Exhibit A.

In October of 1995 Engelhardt experienced serious vision problems allegedly resulting from a detached or torn retina, a condition unrelated to glaucoma. Id. at 2–3. Following eye surgery, Engelhardt was still allegedly unable to continue his medical practice. Id. at 3. When Engelhardt applied for disability policy benefits, Revere denied coverage based upon the disputed amendment to Engelhardt's application. Revere's Opp'n Engelhardt's Mot. Remand at 4.

Engelhardt originally filed suit in the Circuit Court of Montgomery County on April 2, 1996, alleging a state law claim of fraudulent inducement arising out of the disability policy ("Count I"). Revere removed the action to this court on April 25, 1996, asserting that Engelhardt's claims were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA") and, in the alternative, that supplemental jurisdiction applied to any claims that do not concern federal questions. On April 25, 1996, Montgomery consented to removal of this matter to federal court. On April 30, 1996, the Plaintiff amended his complaint to add a second claim for lost benefits ("Count II") under § 502(a)(1) of ERISA, 29 U.S.C.A. § 1132(a)(1)(B). Plaintiff now seeks to remand the case.

Revere reconsidered its earlier denial and on August 15, 1996, agreed to pay disability benefits to Engelhardt. Letter from Franklin H. Jancura to Engelhardt of 8/15/96, at 1–2. In the letter communicating this decision, Revere included a check for previously unpaid benefits and represented that it would pay future disability benefits "to the extent you continue to be eligible for said benefits

---

1. Parties to this action are plaintiff, Engelhardt, and defendants Paul Revere Life Insurance Co. ("Revere") and Stan Montgomery d/b/a Stan Montgomery Insurance ("Montgomery"). The original complaint filed in state court also included three unnamed fictitious defendants.

under the terms of the benefit plan." *Id.* at 2. Revere also offered to discuss the possibility of paying Engelhardt's attorneys fees incurred during this action. *Id.* In its motion for summary judgment, Revere contends that such payments constitute "all of the relief available to plaintiff." Revere's Br. Supp.Mot.Summ.J. at 5–6.

Following a telephone status conference with the court, Engelhardt submitted a "Motion for Dismissal of Count Two Without Prejudice" ("Pl.'s Mot. Dismiss") on October 3, 1996. Revere responded to this motion on October 8, 1996. In his motion for dismissal, Engelhardt stated that Revere has represented to Engelhardt's attorneys that it intended to make disability payments to Engelhardt as long as Engelhardt remained disabled. Pl.'s Mot. Dismiss ¶ 2. Engelhardt also represented to the court that Revere had also offered to adjust the interest payments on past-due amounts to reflect an interest rate of 1½% per month and to pay a reasonable attorney's fees to Engelhardt's counsel. In its response, Revere stated that it had not yet agreed to pay interest at the rate of 1½% on the past-due payments but was prepared to discuss the proper interest rate under ERISA. Further, Revere expressed its willingness to reimburse Engelhardt for a reasonable amount of attorney's fees and to participate in mediation if needed to resolve this question.

## Discussion

### *Motion to Dismiss*

■ Count II of Engelhardt's complaint states a cause of action implicating a question of federal law. Such a claim is sufficient to prevent the remand of an action to state court. However, the benefits claimed under Count II have been tendered by Revere and only two ancillary issues remain for resolution: attorney fees and the proper interest rate on past-due benefits.[2] The claimed disability benefits are now being provided in accordance with the Policy, which means that Engelhardt's alleged wrong has been righted.

Therefore, the court finds that Engelhardt's motion to dismiss Count II is due to be granted in reliance upon the de facto settlement reached between the parties. This dismissal resolves Engelhardt's ERISA claims resulting from the initial denial of disability benefits under the Policy.[3] The parties are left to resolve the issues of attorney's fees and the proper interest rate. The court retains jurisdiction over the resolution of these issues following this dismissal.

### *Motion to Remand*

Count I, on the other hand, still awaits resolution. Engelhardt claims that this count is ripe for remand to state court, while Revere contends that it is preempted by ERISA. Revere argues that this preemption erases Count I from Engelhardt's complaint and results in complete dismissal of this action. Revere asserts that ERISA preempts Engelhardt's state law claim because the claim "relates to" an employee benefit plan, i.e., the Policy issued to Engelhardt's group practice. Engelhardt, nevertheless, argues that ERISA does not preempt his cause of action because state law fraudulent inducement claims are not subject to ERISA preemption and Engelhardt is not an ERISA entity, and therefore, ERISA does not preempt his claim. The court agrees with Engelhardt that Count I is due to be remanded to the Circuit Court of Montgomery County.

It is well-settled that the defendants, as the parties removing an action to federal court, have the burden of establishing federal jurisdiction. *Sullivan v. First Affiliated Secs.*, 813 F.2d 1368 (9th Cir.1987), *cert. denied,* 484 U.S. 850, 108 S.Ct. 150, 98 L.Ed.2d 106 (1987). Because the removal statutes are strictly construed against removal, generally speaking, all doubts about removal must be resolved in favor of remand. *See Shamrock Oil and Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Butler v. Polk,* 592 F.2d 1293 (5th Cir.1979);

---

**2.** While not identified as a settlement by the parties the resolution of this claim between the parties is, in effect, a de facto settlement of Engelhardt's ERISA claim for benefits due.

**3.** This dismissal also applies to any claims for Policy benefits that Engelhardt has or may bring against Montgomery. The payment of benefits due extinguishes all ERISA claims arising from the alleged wrongful denial of Policy benefits.

*Paxton v. Weaver,* 553 F.2d 936 (5th Cir. 1977).

In removal and remand situations, the plaintiff largely controls his or her own destiny through the complaint. The plaintiff "'may avoid federal jurisdiction by exclusive reliance on state law.'" *Sexton v. Principal Financial Group,* 920 F.Supp. 169, 173 (M.D.Ala.1996) (quoting *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *Burke v. Humana Ins. Co.,* No. 95–T–299–N, slip op. at 4 (M.D.Ala. May 11, 1995)). In order to effectuate this narrow interpretation of the removal statute, the court should look to the "face of the complaint" and consider only the claims established according to the well-pleaded complaint rule. *Id.* at 172–173. For example, in *Sexton,* this court found that the plaintiff's complaint did not state a federal ERISA claim where it contained only state law claims. *Id.* at 173 (finding additionally that the plaintiff's action was not an "action for benefits by an employee pursuant to an insurance plan" and therefore did not qualify for ERISA preemption).

ERISA broadly preempts state law claims relating to employee benefit plans brought by ERISA participants and beneficiaries. 29 U.S.C. § 1144(a); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The first step in deciding whether ERISA preempts Engelhardt's state law claim is determining if an "employee welfare benefit plan" was established. 29 U.S.C. § 1002(1) defines an "employee welfare benefit plan" as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such a plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training

programs, or day care centers, scholarship funds, or prepaid legal services, . . . .

29 U.S.C. § 1002(1). In interpreting this statute, the Eleventh Circuit divides the definition of an "employee benefit plan" under § 1002(1) into five essential elements: (1) a plan, fund, or program; (2) established or maintained; (3) by an employer or by an employee organization, or by both; (4) for the purpose of providing medical, surgical, . . ., unemployment or vacation benefits, . . ., (5) to participants or their beneficiaries. *Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir.1982). Following Engelhardt's lead, the court assumes that these requirements have been met and that an ERISA plan has been established.[4]

█ Engelhardt, however, contends that his claim of fraudulent inducement is not covered by the preemptive provisions of ERISA. Pl.'s Mot. to Remand at 4–13. Engelhardt bases this contention upon two arguments arising out of the Eleventh Circuit's recent decision in *Morstein v. National Ins. Servs., Inc.,* 93 F.3d 715 (1996). Engelhardt's first argument is based upon the *Morstein* court's interpretation of an earlier Eleventh Circuit decision, *Variety Children's Hosp., Inc. v. Century Medical Health Plan,* 57 F.3d 1040 (11th Cir.1995). Engelhardt claims that the *Morstein* court's reading of its earlier decision in *Variety* exempts his claim of fraudulent inducement from ERISA preemption. In *Variety,* an action was brought by a hospital, through an assignment of claims by the beneficiary and his parents, against the ERISA plan for a failure to pay benefits allegedly due under the terms of the plan. 57 F.3d at 1041–42. The *Variety* court drew a fine distinction between a misrepresentation involving benefits allegedly due under the terms of the plan and benefits specifically promised to be paid by the plan. *Id.* at 1042–43. In the former case, the court found that "the state law claims have a nexus with the ERISA plan and its benefits system" and are, therefore, preempted by ERISA. *Id.* at 1042. However, in a situation where an ERISA insurer "represents to the health care provider that a specific treat-

---

4. Engelhardt does not argue that an ERISA plan has not been created but instead acknowledges

that such a plan exists. Pl.'s Mot. to Remand at 4.

ment is *fully* covered under the policy and only after lengthy and expensive treatment informs the provider that the policy contains a significant limitation on that coverage," the claim would not be preempted by ERISA. *Id.* at 1043 n. 5.

At first glance, the *Variety* holding appears to apply only to representations made by an insurer to a health care provider. However, the *Morstein* court interpreted the *Variety* decision in the course of its extensive review of preemption case law, expanding *Variety's* application. 93 F.2d at 719–23. After recounting the *Variety* facts and holding, the *Morstein* court restated the *Variety* holding as follows: "When a state law claim involves the reliance on an insurer's promise that a particular treatment is fully covered under a policy, however, a claim of promissory estoppel is not 'related to' the benefits plan." *Id.* at 723 (holding that a promissory estoppel claim is not preempted by ERISA). This interpretation seems to broaden the scope of the *Variety* holding to apply to an insurer's representation to either a health care provider or a participant or beneficiary. In a footnote, the *Morstein* court contrasts the non-preempted *Variety* situation with an "action brought by a beneficiary against an insurance company regarding the scope of the coverage of its plan," declaring in such a situation, that the claim would be preempted. *Id.* at n. 11. Despite the Eleventh Circuit's apparent expansion of *Variety*, the court is unable to determine how far *Morstein* meant to expand the *Variety* holding. Consequently, the court finds that *Variety* applies only in situations of misrepresentations by an insurer to a health care provider and does not apply to misrepresentation by an insurer to a participant or beneficiary. Therefore, the court finds that if Engelhardt is an ERISA participant or beneficiary, his claim is still preempted despite the *Variety* holding.[5]

While *Morstein* does not aid Engelhardt in his attempt to use the *Variety* holding to his advantage, Engelhardt also argues

that *Morstein* excludes fraudulent inducement claims from ERISA preemption claims. Count I of Engelhardt's complaint claims that Montgomery and Revere fraudulently induced Engelhardt to purchase the disability policy based upon the alleged misrepresentations of Montgomery and Revere personnel. Pl.'s Compl. ¶¶ 8–33. In *Morstein*, the plaintiff, the president and sole shareholder of a corporation, purchased a replacement major medical policy for herself and the other company employee. 93 F.3d at 716–17. The plaintiff alleged that the insurance agent who sold the policy assured her that the plaintiff's preexisting medical conditions would not affect her coverage under the new policy. *Id.* at 717. Over a year later the plaintiff underwent hip replacement surgery and submitted a claim to her insurer. *Id.* The insurer denied the claim and rescinded the policy citing the plaintiff's failure to disclose a preexisting condition. *Id.* The plaintiff filed a fraudulent inducement claim against the agent who sold her the policy and the independent insurance agency which employed the agent. *Id.*

The *Morstein* court ultimately held that the plaintiff's claims against the agent and the independent insurance agency was not preempted by ERISA because those claims did not "have a sufficient connection with the plan to 'relate to' the plan." *Id.* at 724. In route to this holding, the *Morstein* court noted that the Supreme Court "turned the tide on the expansion of the preemption doctrine" in *New York Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) by holding that general state health care regulations were not preempted by ERISA. *Id.* at 721–22 ("While the narrow holding in *New York Blues*, i.e., state laws that govern general health care regulation and affect ERISA plans only by means of indirect economic effects are not preempted, is not particularly relevant to the instant case, the broad guidance that the Court gave

---

5. Additionally, *Variety* protects only promissory estoppel claims from ERISA preemption. *Variety*, 57 F.3d at 1042–43. However, it does not appear that Engelhardt has made a claim of promissory estoppel in this action. Instead, the court interprets Count I as a fraudulent induce-

ment claim and Count II as a claim for ERISA benefits. However, even if a claim of promissory estoppel is lurking within Engelhardt's complaint, the court's finding provides Engelhardt no protection from ERISA preemption on a claim of promissory estoppel.

in analyzing a state law is helpful."). While explaining its decision, the *Morstein* court pointed out that the insurance agent and agency are not ERISA entities and that to preempt such claims would "immunize insurance agents from personal liability for fraudulent misrepresentations regarding ERISA plans." *Id.* at 723. In this action, Montgomery is an independent agent and his agency is an independent insurance agency, while Revere is an ERISA insurer pursuant to the court's earlier finding that an ERISA plan has been established. Therefore, the court finds that Engelhardt's fraudulent inducement claim against Montgomery and his agency is not preempted by ERISA. However, the court also finds that Engelhardt's claim against Revere is not protected from preemption by the holding in *Morstein.*

The *Morstein* court did not exhaustively list all non-preempted state actions involving ERISA plans. Instead, the *Morstein* decision acknowledges that other factual circumstances may lead to a finding of non-preemption. *Id.* at 722 n. 9. A close reading of the *Morstein* opinion suggests a possible scenario for non-preempted claims. As stated previously, the *Morstein* court relied on the potential immunity of independent insurance agents from suits as one of the bases for finding that fraudulent inducement claims against independent insurance agents were not preempted. *Id.* at 723. While not specifically explained by *Morstein,* this immunity springs from a non-ERISA entity's immunity from suits brought by an ERISA entity under ERISA. If the entity is not an ERISA entity, then it cannot be sued under the ERISA civil enforcement provisions even if the aggrieved party is an ERISA entity. For example, if a fraudulent inducement claim against an independent insurance agent could not be brought as a state law claim due to preemption, such a claim could also not be brought under the terms of ERISA because the civil enforcement provisions of ERISA allow recovery of benefits actions to be filed only against plans. *See Brown v. Continental Baking Co.,* 891 F.Supp. 238 (E.D.Pa. 1995); *Marcum v. Zimmer,* 887 F.Supp. 891 (S.D.W.Va.1995); *McKinnon v. Blue Cross-Blue Shield of Alabama,* 691 F.Supp. 1314 (N.D.Ala.1988), *aff'd,* 874 F.2d 820 (11th Cir. 1989). Therefore, *Morstein* seems to provide an opening for non-preemption when to do so would preclude a recovery against the prospective defendants.

Engelhardt argues that he is in such a position regarding his fraudulent inducement claim against Revere. Engelhardt insists that he is not an ERISA participant or beneficiary, but, instead, an ERISA employer and therefore does not have standing under ERISA to bring an action against Revere in its role as the Surgeons' ERISA plan. *See* 29 U.S.C.A. § 1132 (West 1985 & Supp.1996). The definitions of "participant" and "beneficiary" have proven to be "elusive" and "oblique" when determining the scope of ERISA coverage. *Madden v. Country Life Ins. Co.,* 835 F.Supp. 1081, 1085 (N.D.Ill.1993). The result is a jumble of conflicting caselaw defining these important ERISA labels.

ERISA defines a "participant" as "any employee or former employee of an employer, ..., who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer...." 29 U.S.C.A. § 1002(7) (West Supp.1996). The Supreme Court has labeled this definition "completely circular" and stated that it "explain[s] nothing." *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 323, 112 S.Ct. 1344, 1348, 117 L.Ed.2d 581 (1992). In reaction, the Court directed lower courts to "adopt a common-law test for determining who qualifies as an 'employee' under ERISA." *Id.* (adopting "the general common law of agency, rather than ... the law of any particular State"). Among the factors the Court considered are: (1) the hiring party's right to control the method for completing tasks; (2) the skill required; (3) source of the workplace tools; (4) location of the work; (5) the duration of the relationship between the parties; (6) the right of the hiring party to assign additional tasks to the hired party; (7) the ability of the hired party to determine work hours and work method; (8) form of payment; (9) the hired party's role in controlling assistants; (10) the relationship of the work being done by the hired party to the hiring party's business; (11) the business status of the hiring party; (12) provision of employee benefits; and (13) the tax treat-

ment of the hired party. *Id.* at 323–24, 112 S.Ct. at 1348–49; *see also Dorand v. Security Connecticut Life Ins. Co.*, No. 96–T–321–N (M.D.Ala. June 28, 1996) (Thompson, C.J.) (condensing list to eight factors).

Application of these factors has produced widely different results. For instance, the Fourth Circuit in *Madonia v. Blue Cross & Blue Shield of Virginia*, 11 F.3d 444 (1993), *cert. denied*, 511 U.S. 1019, 114 S.Ct. 1401, 128 L.Ed.2d 74 (1994), held that a corporation's sole shareholder was an ERISA employee relying on the source of the shareholder's salary, tax treatment of the shareholder, and the shareholder's listing of the corporation as his employer on his plan application. However, the *Madonia* court mistakenly omitted at least one of the *Darden* factors in reaching its conclusion. *Sexton v. John Alden Life Ins. Co.*, No. 94–A–72–N (M.D.Ala. May 2, 1994) ("In *Madonia*, the Fourth Circuit's analysis, is devoid of any reference to the 'control' element."). Courts must be careful to avoid overlooking important factors such as control when determining an individual's ERISA status. *See Dorand*, slip op. at 7 (cautioning courts against neglecting factors or focusing too heavily on a single factor). After careful consideration of the *Darden* test, this court finds that Engelhardt is an employer under the *Darden* test. Engelhardt controlled the manner of his work, his position required a high level of skill, he took only those projects that he desired, he determined the length of his workday, he was in charge of assigning additional tasks to his subordinates, he controlled his own staff, he was paid based upon his individual production, and employee benefits were paid for the partner doctors and their business manager. *See* Engelhardt Aff. at 1–3. While the court does not find that Engelhardt has met every *Darden* factor, the court is satisfied that Engelhardt is an employer.

The court must next consider if Engelhardt as an employer can still meet the definition of an ERISA participant. Several courts have stated that an employer cannot also be an ERISA participant. *Meredith v. Time Ins. Co.*, 980 F.2d 352, 356 (5th Cir. 1993); *Fugarino v. Hartford Life & Acc. Ins. Co.*, 969 F.2d 178, 186 (6th Cir.1992), *cert. denied*, 507 U.S. 966, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993); *Kwatcher v. Massachusetts Serv. Employees Pension Fund*, 879 F.2d 957, 959 (1st Cir.1989);[6] *Giardono v. Jones*, 867 F.2d 409, 411–12 (7th Cir.1989); *Peckham v. Board of Trustees of the Int'l Brotherhood of Painters and Allied Trade Union*, 653 F.2d 424, 427–28 (10th Cir.1981); *Dorand*, No. 96–T–321–N, at 8–9; *Sexton v. John Alden Life Ins.*, No. 94–A–72–N, 1994 WL 913331 (M.D.Ala. May 2, 1994) (Albritton, J.); *Brech v. Prudential Ins. Co. of America*, 845 F.Supp. 829, 832–33 (M.D.Ala. 1993) (De Ment, J.). For example, the *Dorand* court explains that under the common law agency principles of *Darden* there must be a master and a servant. *Dorand*, slip op. at 9. To simultaneously hold that Engelhardt is an employer by virtue of the common law agency test and that Engelhardt is also an employee "of an employer" defies logic. *See* 29 U.S.C.A. § 1002(7) (West Supp. 1996); *Dorand*, slip op. at 9. Therefore, the court reaffirms its finding in *Brech* and finds that Engelhardt may not be simultaneously considered both an ERISA employer and a participant.

Revere also claims that Engelhardt is an ERISA beneficiary which would mean that he would have standing to bring an action under the ERISA civil enforcement scheme. *See* 29 U.S.C.A. § 1132(a)(1)(B) (West Supp.1985). ERISA defines beneficiaries as: "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C.A. § 1002(8) (West Supp.1996). Since Engelhardt is not a participant, he cannot designate himself as a beneficiary under the plan. However, it is possible that Engelhardt may be a beneficiary "by terms of an employee benefit plan." *See Prudential Ins. Co. of America v. Doe*,

---

**6.** In *Darden* the Supreme Court disapproved of the *Kwatcher* court's rejection of the common law test, but the Court did not comment on the *Kwatcher* court's holding that an employer may not also be a ERISA participant. *See Darden*, 503 U.S. at 323–25, 112 S.Ct. at 1348–49. *But see Madonia*, 11 F.3d at 449 (suggesting that Kwatcher's holding that an employer cannot also be a participant was also overruled).

76 F.3d 206, 208 (8th Cir.1996); *Robinson v. Linomaz,* 58 F.3d 365, 369 (8th Cir.1995); *Peterson v. American Life & Health Ins. Co.,* 48 F.3d 404, 408 (9th Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 377, 133 L.Ed.2d 301 (1995). The courts adopting this position base their holding upon a literal reading of the beneficiary definition. *See id.*

However, several district courts disagree with the Eighth and Ninth Circuits. *See Madden,* 835 F.Supp. at 1086–87; *Kelly v. Blue Cross & Blue Shield,* 814 F.Supp. 220, 229 (D.R.I.1993); *Sexton,* slip op. at 9–10; *Dorand,* slip op. at 10–12. These courts base their rejection of these holdings on two points: (1) to designate employers as beneficiaries would run counter to the anti-inurement provisions of ERISA; and (2) to designate employers as beneficiaries undermines the traditional insurance definition of beneficiary. *See e.g., Madden,* 835 F.Supp. at 1086. In Section 1103(c)(1), ERISA directs that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." [7] To allow an employer to be an ERISA beneficiary directly contradicts this absolute directive. *See Madden,* 835 F.Supp. at 1085–1086 (citing *Giardono v. Jones,* 867 F.2d 409, 411–12 (7th Cir.1989)). In *Prudential,* the Eighth Circuit, with very little explanation, dismissed the anti-inurement clause as "an insufficient basis" for not treating an employer as a beneficiary. 76 F.3d at 209. This decision is contrary to one of the central goals of ERISA: "Congress's overriding goal of 'provid[ing] the maximum degree of protection to working men and women covered by private retirement programs.'" *Kwatcher,* 879 F.2d at 962 (citing S.Rep. No. 127, 1974 U.S.Code Cong. & Admin.News at 4854). Based on the clear language of the anti-inurement clause and the central goal of ERISA, the court finds that Engelhardt cannot be both an ERISA employer and a beneficiary.

The court also finds that treating an employer as a beneficiary is contrary to the traditional definition of a beneficiary. The *Dorand* court explained that an insurance policy beneficiary is "someone designated by a participant, normally a family member or a dependent." Slip op. at 11 (citing *Sexton,* slip op. at 10; *Madden* 835 F.Supp. at 1086–87). The definition of an ERISA plan supports this traditional definition by defining an "employee welfare benefit plan" as a plan established or maintained "for the purpose of providing for *its participants or their beneficiaries.*" 29 U.S.C.A. § 1002(1) (West Supp. 1996) (emphasis added); *see also Dorand,* slip op. at 11. The court finds that an ERISA beneficiary is an individual designated by a plan participant and not an employer such as Engelhardt.

■ Revere additionally argues that Engelhardt cannot be an employer because he is instead merely a corporate shareholder and corporate employee. Revere argues that Engelhardt cannot "have it both ways and it is ludicrous for him to even attempt such a fallacious argument." Revere's Supp. Br. Opp'n, 9/24/96, at 7. Revere argues to allow Engelhardt to seek shelter under the corporate form in some instances and then walk outside that shell during an ERISA dispute is both unfair and improper. *Id.* Revere cites no cases in support of its contention and seeks to distinguish the *Sexton* and *Dorand* opinions offered by Engelhardt. However, both *Dorand* and *Sexton* dealt with corporate shareholder employers. *Dorand,* slip op. at 8; *Sexton,* slip op. at 2. The ERISA definition of an employer supports the *Dorand* and *Sexton* findings. 29 U.S.C.A. § 1002(5) (West Supp.1996) (defining employer as "any person acting directly as an employer, or indirectly in the interest of an employer"). Based upon this definition and the preceding discussion, the court finds that a corporate shareholder such as Engelhardt is an ERISA employer under the terms of the *Darden* test.

---

**7.** The anti-inurement provision in combination with the definition of beneficiary exhibits a certain circular quality akin to the definition of employee noted by the *Darden* court. Until this issue is clarified, a wide gap among the opinions of the courts will likely remain.

CONCLUSION

The court finds that an ERISA plan was formed by the Surgeons. The court also finds that Engelhardt was an employer under the terms of the *Darden* common law agency test. Additionally the court finds that an employer may not be either an ERISA participant or beneficiary. Based upon these findings, the court finds that Engelhardt does not have standing to bring an action under ERISA against Revere. Therefore, Engelhardt's claims are not preempted by ERISA.

Based upon its dismissal of Engelhardt's ERISA claim and its finding that Engelhardt's claim in Count I is not preempted, the court finds that Engelhardt's motion for remand is due to be granted.

Accordingly, it is CONSIDERED and ORDERED that Engelhardt's motion for dismissal of Count II of his complaint be and the same is hereby GRANTED and it is further CONSIDERED and ORDERED this case be and the same is hereby REMANDED to the Circuit Court of Montgomery County. The Clerk of the Court is directed to take the appropriate steps to effectuate said remand.