David REED, as Parent and Legal Guardian of Samuel Reed, a Minor, Plaintiff,

v.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA d/b/a The Prudential Health Care System of Tampa Bay, Defendant.

No. 97–853–CIV–T–17E.

United States District Court, M.D. Florida, Tampa Division.

March 13, 1998.

C. Howard Hunter, III, Freeman, Hunter & Malloy, Francisco J. Vinas, Freeman, Hunter, & Malloy, Tampa, FL, for Plaintiff.

Paul R. Ezatoff, Jr., Alan Harrison Brents, Katz, Kutter, Haigler, Alderman, Bryant & Yon, P.A., Tallahassee, FL, for Defendants.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant's Motion for Final Summary Judgment and Memorandum of Law (Dkt.12), Defendant's Statement of Undisputed Facts (Dkt.14), Plaintiff's Motion for Final Summary Judgment and Memorandum of Law (Dkt.23), Plaintiff's Statement of Undisputed Facts (Dkt.26), Defendant's Memorandum· in Opposition to Plaintiff's Motion· for Final Summary Judgment (Dkt.28), and Defendant's Statement of Disputed Facts (Dkt.29).

### STANDARD OF REVIEW

This Circuit has long held that summary judgment is appropriate only when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the non-moving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). The moving party bears the initial burden of demonstrating for the court the basis for its motion for summary judgment by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which that party believes show an absence of any genuine issue of material fact. *Hairston v. Gainesville Sun· Publishing Co.*, 9 F.3d 913, 918 (11th Cir.1993). Factual disputes preclude summary judgment.

In *Celotex Corp. v. Catrett*, the United States Supreme Court held:

> In our view, the plain language of [Fed. R.Civ.P.] 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Once the moving party has satisfied its burden, the nonmoving party must:

> ... go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'

*Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

A .dispute is genuine, and summary judgment inappropriate, if a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### STATEMENT OF FACTS

Plaintiff, David Reed ("Reed"), as Parent and Legal Guardian of his son Samuel Reed, alleges that The Prudential Insurance Company of America d/b/a The Prudential Health Care System of Tampa Bay ("Prudential"), denied Reed's son's health insurance claim,

thereby breaching the insurance contract between the parties. Reed also asserts legal theories of estoppel and wrongful denial of coverage and petitions this Court for declaratory relief.

In 1993, Reed possessed a Prudential health insurance policy. The policy provided health coverage for Reed and his family. Reed's young child, Samuel, required speech therapy to treat his delayed speech, a problem which was exacerbated in part due to recurrent bilateral ear infections. (Dr. Jeansonne Dep. at 19–26). Samuel had not demonstrated an ability to speak prior to commencing speech therapy. (Pl.'s Dep. at 12, 13, 16, 18). By the age of twenty-three months, Samuel had displayed a severe delay in his repertoire of sounds as he could only articulate primary vowel vocalizations (*i.e.*, "eh" and "oh") and some consonants sounds. (Kynkor Dep. at 14). Although Samuel's speech delay was not due to any anatomical abnormality, the impediment's etiology was unknown. (Dr. Jeansonne Dep. at 12). In the fall of 1993, Reed's medical claim for Samuel's therapy was denied under his policy.

In early 1994, Reed discussed with Mr. Rodon, Prudential's agent, his need to obtain health insurance which would cover Samuel's speech therapy. Mr. Rodon called Prudential's Marketing Representative, Tracy Denney, to find out which of Prudential's policies would cover Samuel's speech therapy. Ms. Denney informed Mr. Rodon who then advised Reed that Prudential's PruCare Plus High Option insurance plan ("PCP"), was the appropriate plan. (Pl.'s Dep. at 27–31; Rodon's Dep. at 18, 21, 27). Reed changed his original health plan for the less expensive PCP plan in June 1994, based upon Rodon's and Denney's affirmations that Samuel's therapy would be covered.

The PCP contract language, wherein the conditions for speech therapy eligibility were expressed, was identical to the language used in Reed's former insurance policy. (Dr. Ira Bloomfield's Aff.; Pl.'s Dep. at 43–44). The condition for eligibility provided:

(a) Speech Therapy to restore speech after a loss or impairment of a demonstrated previous ability to speak. To qualify under this (a), the loss or impairment must not be caused by a mental, psychoneurotic or personality disorder.

Two examples of speech therapy not covered above: therapy to correct pre-speech deficiencies; therapy to improve speech skills that have not fully developed.

(b) Speech Therapy to develop or improve speech, after surgery to correct a defect that both: (a) existed at birth; (ii) impaired or would have impaired the ability to speak.

The PCP plan also provided for a maximum of ninety (90) visits per year as evidenced by the following:

For each person in each Calendar Year, there is an Eligible Charge Limit for these services. Only those services will be included that are furnished during not more than 90 days in each Calendar Year in connection with any one Sickness or Injury. Any days on which any of these services that are Eligible Charges Under Parts II are furnished in connection with such Sickness or Injury will count toward this limit.

In July of 1994, Samuel received speech therapy from a PCP approved health care provider. Prudential denied coverage for Samuel's speech therapy. In September 1994, Prudential's Medical Director, Ira G. Mandel, informed Reed that Samuel's speech therapy was denied because the therapy was not "medically necessary" as it had failed to meet the plan's speech therapy conditions. (Pl.'s Compl. ¶ 12; Rodon's Dep., Pl.'s exhibit # 4). On November 30, 1994, after "inhouse" appellate review of Reed's denial of coverage, Prudential granted Reed a one-time administrative exception allowing coverage for Samuel's speech therapy for the remainder of 1994, as well as ninety (90) visits in 1995. (*Id.* ¶ 16).

In January of 1996, Reed's request for continued coverage of Samuel's speech therapy was denied by Prudential. Yet, Prudential paid for Samuel's speech therapy up until August 21, 1996. (*Id.* ¶ 21). Prudential then contacted Reed's health care provider, Beth

Ingram and Associates, and requested reimbursement of all monies paid in 1996. (*Id.* ¶ 21). In March of 1997, Reed filed suit in State Court against Prudential seeking to enforce the health insurance policy. Upon Prudential's Motion, the dispute was removed to this Court in April of 1997, pursuant to 28 U.S.C. § 1441(b), since the action arose under the Employee Retirement Income Security Acts of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

## DISCUSSION
### Count I–Breach of Contract Claim

■ Prudential claims that Reed's insurance policy is a group health insurance contract purchased by his employer, Reed's Swimming Pools and Service, Inc., that provides health insurance benefits to its employees. Prudential is correct in determining that this group health insurance contract meets the definition of an "employee welfare benefit plan" under 29 U.S.C. § 1002(1). An ERISA-qualified "employee welfare benefit plan" is a:

(1) "plan, fund, or program" (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability ... benefits (5) to participants or their beneficiaries.

*Donovan v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir.1982); 29 U.S.C. § 1002(1). Moreover, ERISA's coverage provision reaches "any employee benefit plan if it is established or maintained by an employer engaged in commerce or in any industry or activity affecting commerce..." 29 U.S.C. § 1003(a)(1). Reed stipulates that the PCP contract in question is subject to the laws of ERISA. (Reed's Motion for Final Summary Judgment at 2).

■ Prudential next argues that Reed's breach of contract claim is preempted by ERISA's provisions. ERISA preempts all State common law claims relating to employee benefit plans. *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); 29 U.S.C. § 1144(a). ERISA preemption transforms the related State law claim into a federal question. *Be-*

lasco v. W.K.P. Wilson & Sons, Inc., 833 F.2d 277, 282 (11th Cir.1987). A State law "relates to" an employee welfare benefit plan if the State law "has a connection with or reference to such a plan." *Variety Children's Hospital, Inc. v. Century Medical Health Plan, Inc.,* 57 F.3d 1040, 1042 (11th Cir.1995) (citing *District of Columbia v. Greater Washington Bd. of Trade,* 506 U.S. 125, 129, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (1992)). Additionally, Congress intended that the words "relate to" be construed broadly. *See Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983).

This Court has previously determined that a breach of contract claim is a State law claim preempted by ERISA. *See Jacobs v. Blue Cross and Blue Shield of Iowa,* 835 F.Supp. 1378, 1381 (M.D.Fla.1993). In this case, a breach of contract claim directly relates to the issue of coverage under Reed's plan. Accordingly, and as Reed appears to concede in his Motion for Final Summary Judgment, Count I is preempted by ERISA.

### Count II–Estoppel/Wrongful Denial of Coverage

■ Prudential asserts that Reed's estoppel/wrongful denial of coverage claim is also preempted by ERISA because this claim is closely related to and intertwined with Prudential's decision to deny benefits.

■ Although ERISA preempts equitable estoppel claims relating to employee benefit plans, federal courts are empowered to create federal common law to govern ERISA actions where ERISA is silent on a particular issue. *Pilot Life,* 481 U.S. at 56, 107 S.Ct. at 1557. The Eleventh Circuit has declared that an equitable estoppel claim is not viable where an ERISA-plan's representative makes oral amendments or modifications to the employee's plan because ERISA speaks to this matter. *See Nachwalter v. Christie,* 805 F.2d 956, 960 (11th Cir.1986).

The Eleventh Circuit has narrowly held that ERISA does not preempt a plaintiff-employee's equitable estoppel claim where a plaintiff has relied to his or her detriment on the representations of the defendant's plan representative, who was orally interpreting

an ambiguous provision of an ERISA-qualified plan. *Kane v. Aetna Life Insurance*, 893 F.2d 1283, 1284 (11th Cir.1990); *see also Jacobs*, 835 F.Supp. at 1380 (citing *National Companies Health Benefit Plan v. St. Joseph's Hosp. of Atlanta, Inc.*, 929 F.2d 1558 (11th Cir.1991)). In *Kane*, the plaintiff sought to adopt a premature infant requiring extensive medical care. *Kane*, 893 F.2d at 1284. The plaintiff called the ERISA-plan's representative to determine whether the infant would receive health coverage under plaintiff's policy, were the plaintiff to adopt the infant. Based upon Aetna's representatives' affirmative answers to the Kanes and to the hospital's insurance verifier, the Kanes underwent adoption formalities. Subsequently, insurance coverage for the infant's enormous medical expenses was denied. The plaintiff filed suit against the defendant, grounded on theories of equitable estoppel and wrongful denial of a claim.

The Court found that the policy's language was in fact ambiguous. According to *Kane*, a plan's provisions were ambiguous if "reasonable persons could disagree as to their meaning and effect." *Id.* at 1285. The Court determined that because the plan's language was ambiguous, the representatives' representations were interpretations of the plan's language—not modifications. As such, plaintiff's estoppel claim was not preempted by ERISA.

In the instant case, Prudential contends that Reed's equitable estoppel claim is preempted because:

(1) Reed knew as early as September 7, 1994 that medical coverage for Samuel did not exist and that Prudential's agent's interpretation, that coverage existed, was incorrect;

(2) The PCP policy's language which governed speech therapy coverage was unambiguous and was the same language used in Reed's prior policy;

(3) The policy's plain language controlled the parties' contractual relationship and denial was based upon the plan's express language which stated that speech therapy benefits were available in only two instances: I) to restore speech after a loss or impairment of a demonstrated previous ability to speak or, ii) to develop or improve speech after surgery to correct a defect that both existed at birth and impaired, or would have impaired, the ability to speak; and,

(4) Mr. Rodon, Prudential's agent, did not intentionally mislead Reed.

Although Reed has not filed an opposing memorandum of law, this Court will consider Reed's Motion for Final Summary Judgment as the opposition to Prudential's Motion for Final Summary Judgment.

Reed asserts that his equitable estoppel claim is viable. Reed contends that the PCP policy provisions are ambiguous. He points out that the contract's provision governing speech therapy could reasonably be interpreted as providing coverage in not two but three situations: I) where an individual has lost his ability to speak; ii) after surgery to correct a condition hindering or precluding speech; or, iii) to develop or improve speech. Reed further claims that the policy's limitation of visits per year provision sets out ambiguity when it states "... services will be included that are furnished during not more than 90 days in each Calendar Year in connection with any Sickness or Injury."

As in *Kane*, the Court's analysis must focus on the language of the Plan itself. *Kane*, 893 F.2d at 1285. Regarding the conditions for speech therapy eligibility, the Court finds that the policy's language is clear and unambiguous. Condition (a) allows for speech therapy where an insured or her beneficiary had a demonstrated previous ability to speak. Condition (a) further provides two clear and express examples of when speech therapy is not covered: I) *therapy to correct pre-speech deficiencies;* and, ii) *therapy to improve speech skills that have not fully developed.* (Emphasis added). Furthermore, the language of Condition (b) does not reasonably lend itself to convey that insurance is provided to develop or improve speech as a separate and generalized idea. Condition (b) states: "Speech Therapy to develop or improve speech, after surgery to correct a defect..." The contract's terms are clear on its face that the speech therapy of Plaintiff's son was not covered under this policy. The limi-

tation of services provision that Reed declares to be a further indication of ambiguity does not communicate any uncertainty. The Court agrees with Prudential that when the provision is read in its entirety, the provision merely establishes a limit on the number of eligible charges that will be covered in a given year. The Court finds that reasonable persons could not disagree as to the debated provision's meaning and effect.

Because this Court finds that the language of Plaintiff's insurance contract was unambiguous, the Court must interpret any statement made by Prudential concerning eligibility of insurance coverage as a modification of the plan. *See Lordmann Enterprises, Inc. v. Equicor, Inc.,* 32 F.3d 1529, 1535 (11th Cir. 1994), *cert. denied,* 516 U.S. 930, 116 S.Ct. 335, 133 L.Ed.2d 234 (1995). As such, the Eleventh Circuit's *Nachwalter* rule, which forbids oral modifications of an ERISA plan, applies.

Furthermore, this Court finds that Reed did not reasonably rely to his detriment on the misleading representation of Prudential's representative. *See Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984). Although Prudential's representative initially informed Reed that under the cheaper PCP policy insurance coverage would be provided for Samuel's therapy and then denied coverage soon after the plan was obtained, no detrimental reliance was incurred because Prudential, via their one-time modification of the plan's terms, agreed to and did pay all the PCP-governed claims for 1994 and 1995. Prudential notified Reed in 1994, that coverage would terminate in 1996. Despite Prudential's error in continuing to pay on Samuel's claims through August of 1996, Reed was fully aware that Prudential's coverage would end in January of 1996. *See Variety,* 57 F.3d at 1043, (plaintiff's promissory estoppel claim denied where insured was initially certified for hospital treatment and then decertified during course of treatment, but plaintiff continued treatment despite actual knowledge that there was no promise to pay).

Due to the foregoing analysis and the absence of any genuine issue of material fact, Prudential is entitled to prevail on summary judgment regarding Reed's estoppel/wrongful denial of coverage claim.

## Count III–Declaratory Judgment

Reed requests that this Court declare that Samuel's speech therapy was covered under Prudential's PCP plan. As found in the Court's analysis of Reed's breach of contract claim, Reed's State law declaratory relief claim relates directly to an employee welfare benefit plan. For this reason, Count III is preempted by ERISA. Accordingly, it is

**ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt.23) is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED** (Dkt.12), and the Clerk of Court shall enter judgment for Defendant.