**Jan CARROLL, Plaintiff,**

v.

**QHG OF ALABAMA, INC. d/b/a Flowers Hospital and Quorum Health Group, Inc., Defendants.**

Civil Action No. 97–D–326–S.

United States District Court,
M.D. Alabama,
Southern Division.

June 17, 1998.

L. Andrew Hollis, Jr., Birmingham, AL, Rufus R. Smith, Jr., Dothan, AL, Mary F. Gunter, Abbeville, AL, for Plaintiff.

Robert C. Brock, Fred W. Tyson, William H. Webster, Montgomery, AL, for Defendant.

---

## ORDER

DE MENT, District Judge.

Before the court is Plaintiff's Motion To Remand ("Pl.'s Mot.") filed March 25, 1997. Defendant Quorum Health Group ("Quorum") filed its Response ("Def.'s Resp.") on April 15, 1997. Plaintiff filed a Reply ("Pl.'s Reply") on April 22, 1997. On February 25, 1998, the court issued an Order directing Plaintiff to submit a supplemental pleading clarifying her claims. This pleading, styled "Plaintiff's Further Memorandum Brief In Support Of Her Motion To Remand" ("Pl.'s Supp.") was filed March 12, 1998. On March 16, 1998, Plaintiff filed her First Amended Complaint, which further clarified her claims. Also before the court is Quorum's Motion To Dismiss filed March 21, 1997. Plaintiff has not filed a response to this pleading.

After careful consideration of the arguments of counsel, relevant law, and the record as a whole, the court finds that Plaintiff's Motion To Remand is due to be granted because the court lacks jurisdiction over Plaintiff's claims. Consequently, the court will not consider Quorum's Motion To Dismiss.

I. Factual Summary And Procedural History

Plaintiff Jan Carroll is employed at Techsonic Industries. Techsonic entered into a contract with Blue Cross Blue Shield of Alabama ("Blue Cross") for the provision of major medical insurance coverage for Techsonic employees. Plaintiff, as a Techsonic employee, obtained coverage through the Blue Cross plan ("Plan").

On May 11, 1996, Plaintiff was involved in a traffic accident with an individual insured by Farmers Insurance Group ("Farmers"). Plaintiff was covered by her insurer—State Farm Mutual Automobile Insurance Company ("State Farm"). She was treated at Flowers Hospital ("Flowers") for injuries sustained during the accident. Following Plaintiff's treatment, Flowers filed a hospital lien against her and contacted Farmers and State Farm. Farmer agreed to pay its policy limits, but issued a check made jointly payable to Plaintiff and Flowers. Plaintiff requested that Flowers submit her claim to Blue Cross, but Flowers refused, stating that they were entitled to the full amount of Plaintiff's bill. Flowers also requested that Plaintiff endorse Farmer's check over to them. In addition, Flowers sent a collection letter to Plaintiff's attorney.

Plaintiff brought suit, on behalf of a class, alleging that under the terms of her Plan, her claims should have been submitted to Blue Cross. She alleges that Flowers refuses to submit claims to Blue Cross if there is the "possibility that the insured patient [has] a right to recover from a third-party tortfeasor." (Pl.'s Mot. at 4.) Her Complaint alleges tortious interference with a contractual or business relationship between herself and the putative class members and Blue Cross, conversion of certain funds, and the wrongful filing of liens. (Pl.'s Mot. at 4, ¶ 4; see also Pl.'s Compl.)

Plaintiff states that she makes no allegation of wrongdoing:

in connection with the administration or management of an ERISA plan and does not seek benefits under an ERISA plan. QHG of Alabama and Quorum Health Group are not insurers/underwriters of or the administrators/managers of Jan Carroll's employer-provided Blue Cross Blue Shield of Alabama major medical plan or of any similar plan covering the prospective class members. QHG of Alabama and Quorum Health Group are not fiduciaries of any subject ERISA plan.

Instead, QHG of Alabama and Quorum Health Group are simply medical care providers who entered into a contract with Blue Cross Blue Shield of Alabama which governed Flower's Hospital's collecting of services rendered Blue Cross Blue Shield of Alabama insureds. If such an insured, like Jan Carroll, sought medical treatment at Flowers Hospital, QHG of Alabama and Quorum Health Group agreed to timely submit a claim for reimbursement to Blue Cross Blue Shield of Alabama **and to not attempt to collect from the insured unless Blue Cross Blue Shield of Alabama failed to pay the claim within sixty days of submission of the claim.**

(Pl.'s Mot. at 4–5 (emphasis in original).) Essentially, Plaintiff asserts that she:

is not seeking to obtain insurance benefits due her from Blue Cross Blue Shield of Alabama. Instead, she is seeking to recover funds received by her from a settlement with a third-party tortfeasor's liability carrier and with her uninsured/underinsured motorist carrier but which the defendants wrongfully deprived her.

(Pl.'s Mot. at 6, ¶ 8.) Basically, this suit is based on Flower's alleged failure to comply with the terms of its contract with Blue Cross, not on Blue Cross's failure to provide any benefits to Plaintiff contemplated under the Plan.

The contracts upon which Plaintiff relies are a series of "Preferred Outpatient Facility Contract[s]" and "Selective Contracting Facility Contract[s]" entered into between Blue Cross and QHG of Alabama, Inc. d/b/a Flowers Hospital, in 1992 and 1994. The 1992 "Preferred Outpatient Facility Contract" states that:

> Hospital agrees to complete and file on a timely basis all claims for benefits for Outpatient Services rendered to Members. . . . [1]

(Pl.'s First Am. Compl., Ex. A, 1992 Preferred Outpatient Facility Contract at 4, ¶ 4.2.) Paragraph 4.4 of the 1992 contract provides:

> Hospital agrees to make no charge for Outpatient Services except to the extent permitted by this Agreement and the Member's Benefit Agreement. Hospital may bill the Member for any co-payment and co-insurance amounts applicable under the member's Benefit Agreement to Outpatient Services but the total amount payable by both the Member and Corporation shall not exceed the amount payable under Article VI for such Outpatient Services. Hospital may bill the Member for services which are not covered under the Member's Benefit Agreement (typical examples being

services for experimental or investigative treatment, and preexisting conditions). *Hospital will not bill Members directly for amounts due from Corporation for Outpatient Services.*[2]

(*Id.*, ¶ 4.4 (emphasis added).) Plaintiff contends that under ¶ 4.4, Flowers "agreed not to bill Members (like Plaintiff) directly for amounts due from the Corporation (BlueCross) [sic] for Outpatient Services." (Pl.'s First Am. Compl., ¶ 3.)

Under the terms of the 1994 "Selective Contracting Facility Contract:"

> Hospital agrees to make no charge for Inpatient Services except to the extent permitted by this Agreement, and the Member's C Plus Contract. Hospital may bill the Member for services which are not covered under the Member's C Plus contract because of exclusions and limitations in the C Plus Contract (typical examples being services for experimental or investigative treatment, and cosmetic surgery). *Hospital will not bill Members directly for amounts due from Corporation.*[3]

(Pl.'s First Am. Compl., Ex. B, 1994 Selective Contracting Facility Contract at 4, ¶ 4.4 (emphasis added).) Paragraph 4.2 of the 1994 contract mirrors ¶ 4.2 of the 1992 contract. (*See, supra; see also,* Pl.'s First Am. Compl., Ex. B, 1994 Selective Contracting Facility Contract at 4, ¶ 4.2.) Plaintiff contends that as in the 1992 contract, under ¶ 4.4 of the 1994 contract, "Defendants agreed not to bill Members directly for amounts due from the Corporation." (Pl.'s First Am. Compl., ¶ 3.)

Quorum admits that it has entered into contracts with Blue Cross, (Answer at 2, ¶ 6), and admits that "in some cases it files a hospital lien for the full amount of the patient's bill in accordance with the Code of Alabama." (*Id.*, ¶ 8.) It denies, however, "that is has breached any contract between

---

1. "Hospital" is defined as QHG of Alabama, Inc., d/b/a/ Flowers Hospital. (*See* Pl.'s First Am. Compl., Ex. A, 1992 Preferred Outpatient Facility Contract at 1, Preamble.) "Member" is defined as "any person who is entitled to receive Outpatient Services under and in accordance with the provisions of a contract or agreement executed by Corporation to provide or administer such services." (*Id.* at 2, ¶ 2.4.) "Corporation" is defined as Blue Cross and Blue Shield of Alabama. (*Id.* at 1, Preamble.)

2. *See supra,* note 1 for definitions.

3. The definitions of "Corporation," "Hospital," and "Member" in the 1994 contract are identical to the definitions utilized in the 1992 contract. *See, supra,* note 1; *see also* Pl.'s First Am. Compl. at 1, Preamble and at 2, ¶ 2.4.

BlueCross·[sic] and itself." (*Id.,* ¶ 8.) After Plaintiff filed this action, Quorum removed it to this court under 28 U.S.C. § 1331 (federal question), arguing that all of Plaintiff's claims are preempted by ERISA. (*Id.* at 9, ¶ 61.)

## II. Discussion

Federal courts are courts of limited jurisdiction, and may only hear cases that they have been authorized to hear by the Constitution or by the Congress of the United States. *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Burns v. Windsor Ins. Co.,* 31 F.3d 1092 (1994). A federal district court is authorized to assert its jurisdiction, however, when claims are asserted under the constitution, laws and treaties of the United States. 28 U.S.C. § 1331.

■ The removing defendant bears the burden of proving the existence of federal jurisdiction, *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1356 (11th Cir.1996), and, because the jurisdiction of federal courts is limited, the Eleventh Circuit Court of Appeals favors remand of cases that have been removed where federal jurisdiction is not absolutely clear. *Burns,* 31 F.3d at 1095. In fact, removal statutes are to be strictly construed, with all doubts resolved in favor of remand. *Diaz v. Sheppard,* 85 F.3d 1502, 1505 (11th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1349, 137 L.Ed.2d 506 (1997); *Burns,* 31 F.3d at 1095; *see also Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). Defendants removed this action solely on federal question grounds.

Section 1144(a) of ERISA, commonly referred to as the preemption clause, provides that ERISA shall "supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "State law" is defined as all "laws, decisions, rules, regulations or other ... actions having the effect of law." 29 U.S.C. § 1144(c).

The United States Supreme Court has broadly interpreted the preemption clause as applying to all state law claims arising out of or related to an employee benefit plan. *See, e.g., Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). State law "relate[s] to" an ERISA governed employee benefit plan if it "has a 'connection with or reference to such a plan,'" *FMC v. Holliday,* 498 U.S. 52, 55, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) (quoting *Shaw,* 463 U.S. at 97, 103 S.Ct. 2890), and ERISA preempts state laws "even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).

The Eleventh Circuit has explained that the preemption clause is "conspicuous for its breadth," and should be "expansively applied." *Swerhun v. Guardian Life Ins. Co. of America,* 979 F.2d 195, 197 (11th Cir.1992) (citations and internal quotations omitted). Nevertheless, "some state law may affect an ERISA plan in "too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." " *Lordmann Enterprises, Inc. v. Equicor, Inc.,* 32 F.3d 1529, 1533 (11th Cir.1994) (citing *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. 2890).

Despite these attempts to define ERISA's "relate(s) to" language, in *Morstein v. National Ins. Services, Inc.,* 93 F.3d 715, 718 (11th Cir.1996) (en banc), the Eleventh Circuit noted that "[o]ur decisions in the ERISA preemption area have been neither consistent nor clear." Consequently, in *Morstein,* the Eleventh Circuit attempted to clarify the ERISA preemption doctrine by "trac[ing] the development of the preemption doctrine before applying the words of the statute" to the facts presented in *Morstein. Id.* at 718.

First, the Eleventh Circuit noted the overall intent of ERISA: " 'ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans.' " *Morstein,* 93 F.3d at 718 (citing *Shaw,* 463 U.S. at 90, 103 S.Ct. 2890). Although § 514(a) of ERISA provides for preemption of state law claims that "relate to" employee benefit plans, the statute "does not define the term 'relate to,' and it has fallen to the court's to deduce Congress's intent and to apply this interpretation to the facts of each case that arises." *Morstein,* 93 F.3d at 718.

The claims alleged in the instant action are state common law tort and contract claims.

In *Morstein,* the Eleventh Circuit noted that the first Supreme Court case to address these types of claims was *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). *Morstein,* 93 F.3d at 720. There, Dedeaux was injured in an employment-related accident and filed a disability claim with Pilot Life, the provider of Dedeaux's employer's long-term disability employee benefit plan. *Id.* When Pilot Life terminated Dedeaux's benefits, he instituted a diversity suit against the company, alleging tortious breach of contract, breach of fiduciary duties, and fraud in the inducement. *Id.* Pilot Life argued that Dedeaux's claims were preempted by ERISA. *Id.* at 720–21. After discussing the legislative history of ERISA, and emphasizing its broad preemptive intent, the Supreme Court held that Dedeaux's claims were preempted. *Id.* The Court concluded that "Dedeaux's common law causes of action, 'each based on alleged improper processing of a claim for benefits under an employee benefit plan, undoubtedly meet the criteria for pre-emption under § 514(a).'"[4] *Id.* at 721 (quoting *Pilot Life,* 481 U.S. at 48, 107 S.Ct. 1549.)

Next, the *Morstein* court analyzed *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), where an employee brought a state law action against his employer alleging that the employer wrongfully terminated him in order to avoid contributing to, or paying benefits under, the employee's pension plan. *Morstein,* 93 F.3d at 721. The Supreme Court found that McClendon's claims were preempted by ERISA, and discussed whether the claim "relates to" an ERISA covered employee benefit plan:

> [I]n order to prevail, a plaintiff must plead, and the court must find, that an ERISA plan exists and the employer has a pension-defeating motive in terminating the employment. Because the court's inquiry must be directed to the plan, this judicially created cause of action "relate[s] to" an ERISA plan.

*Morstein,* 93 F.3d at 721 (citing *McClendon,* 498 U.S. at 140, 111 S.Ct. 478.)

Next, the Eleventh Circuit considered *New York Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). The issue there was whether ERISA "'pre-empts the state provisions for surcharges on bills of patients whose commercial insurance coverage is purchased by employee healthcare plans governed by ERISA, and for surcharges on [health maintenance organizations (HMOs) ] insofar as their membership fees are paid by an ERISA plan.'" *Morstein,* 93 F.3d at 722 (quoting *New York Conference,* 115 S.Ct. at 1673–74.) The district court had concluded that the New York surcharge law was preempted by ERISA because the surcharge would affect commercial insurers and HMOs, and, therefore, indirectly affect ERISA plans by increasing plan costs. *Id.* (citing *New York Conference,* 115 S.Ct. at 1675.) The Second Circuit affirmed, citing *Shaw* and *McClendon. Id.*

The Supreme Court reversed, and "essentially turned the tide of the preemption doctrine." *Id.* The *Morstein* court summarized the Supreme Court's decision in *New York Conference* as follows:

> The governing text of ERISA is clearly expansive.... If "relate to" were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes, pre-emption would never run its course, for "[r]eally, universally, relations stop nowhere." H. James, Roderick Hudson xli (New York ed., World's Classics 1980). But that, of course, would be to read Congress's words of limitation as a mere sham, and to read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality. That said, we have to recognize that our prior attempt to construe the phrase "relate to" does not give us much help drawing the lines here.

---

4. The facts of this case differ from *Pilot Life* in that here, Plaintiff sues under the terms of a contract between the care provider and the insurer, and not under the terms of the benefit plan in effect between the plaintiff and the insurer.

In *Pilot Life,* the plaintiff/beneficiary (Dedeaux) sued the insurer directly alleging breach of the provisions of the benefit plan applicable between he and the insurer.

[*New York Conference*, 514 U.S. at 655–57, 115 S.Ct. at 1677]. The Court next cited the often-quoted language in *Shaw* that defined a law "relat[ing] to" an employee benefit plan as one that " 'has a connection with or reference to such a plan.' " [*Id.* at 1677 (quoting *Shaw*, 463 U.S. at 96–97, [103 S.Ct. 2890]) ]. After acknowledging that the statute in question made no reference to an employee benefit plan, the Court hinged its analysis on interpreting the phrase "connection with" from *Shaw*. The Court then stated:

> But this still leaves us to question whether the surcharge laws have a "connection with" the ERISA plans, and here an uncritical literalism is no more help than in trying to construe "relate to." For the same reasons that infinite relations cannot be the measure of pre-emption, neither can infinite connections. We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objective of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.

[*Id.* at 1677.] The Court went on to reason that a reading of the preemption provision that is so broad as to displace "all state laws affecting costs and charges on the theory that they indirectly relate to ERISA plans ... would effectively read the limiting language in § 514(a) out of the statute...." [*Id.* at 1679]. This conclusion, the Court stated, would contradict the "basic principles of statutory interpretation" and would go against the Court's prior determination that a state law is not preempted when the law has too tenuous a connection with the ERISA plan. [*Id.* at 1679–80]. The Court concluded:

> While Congress's extension of pre-emption to all "state laws relating to benefit plans" was meant to sweep more broadly than "state laws dealing with the subject matter covered by ERISA[,] reporting, disclosure, fiduciary responsibility, and the like," (*Shaw*, 463 U.S. at 98 and n. 19[103 S.Ct. 2890]), nothing in the language of the Act or the context of its passage indicates that Congress chose to displace general health care regulation,

which historically has been a matter of local concern....

[*Id.* at 1679–80 (citations omitted) ].

*Morstein*, 93 F.3d at 721–22. The Eleventh Circuit then turned to the merits of Morstein's claims.

In *Morstein*, the plaintiff was one of two employees of Graphic Promotions, Inc. ("Graphic"). *Morstein*, 93 F.3d at 716. Morstein purchased a major medical insurance policy from Scott Hankins, an insurance broker and employee of the Shaw Agency. *Id.* The policy was administered by National Insurance Services, Inc. ("National"), and was underwritten by Pan–American Life Insurance Company ("Pan–American"). *Id.* Morstein contacted Hankins to replace an existing medical insurance policy, and claimed that Hankins assured her that the new policy covered preexisting medical conditions. *Id.* at 717. One year after the new policy was issued, Morstein underwent hip replacement surgery, and National refused to pay because it asserted that the surgery treated a preexisting condition. *Id.*

Morstein sued Hankins and the Shaw agency in state court, alleging negligence, malfeasance, misrepresentations, and breach of contract based on the representation that the purchased policy covered preexisting conditions. *Id.* The Defendants removed, arguing ERISA preemption. *Id.* The district court denied Morstein's motion to remand, concluding that her claims were "clearly relate[d] to the employee benefit plan established by Graphic Promotions; therefore, those claims are preempted by ERISA." *Id.* The Eleventh Circuit reversed, holding that "state law claims against an independent insurance agent and his agency for fraudulent inducement to purchase and negligence in processing her application for an ERISA-governed insurance plan" did not fall within ERISA's preemption doctrine "as they do not have a sufficient connection with the plan to 'relate to' the plan." 93 F.3d at 724.

The Eleventh Circuit concluded that under *New York Conference*, "we look to see whether the state law claims brought by Morstein have a 'connection with' the ERISA plan. To determine that, we examine whether the claims brought fit within the scope of state

law that Congress understood would survive ERISA." *Morstein*, 93 F.3d at 722. Relying on the Fifth Circuit Court of Appeals' opinion in *Perkins v. Time Ins. Co.*, 898 F.2d 470, 473 (5th Cir.1990), the Eleventh Circuit held that "when a state law claim brought against a non-ERISA entity does not affect relations among principal ERISA entities as such, then it is not preempted by ERISA. To the extent that any of our prior opinions differ from this holding, they should be deemed overruled." *Morstein*, 93 F.3d at 722.

The Eleventh Circuit explained:

> Morstein is a plan beneficiary who is bringing suit against the insurance agency and agent, who she alleges fraudulently induced her to change benefit plans. The insurance agent and agency are not ERISA entities. ERISA entities are the employer, the plan, the plan fiduciaries, and the beneficiaries under the plan. *See Travitz v. Northeast Dept. ILGWU Health & Welfare Fund*, 13 F.3d 704, 709 (3d Cir.), *cert denied*, 511 U.S. 1143, 114 S.Ct. 2165, 128 L.Ed.2d 888 (1994); *Sommers Drug Stores v. Corrigan Enters., Inc.*, 793 F.2d 1456, 1467 (5th Cir.1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987). Hankins and the Shaw Agency had no control over the payment of benefits or a determination of Morstein's rights under the plan.

*Morstein*, 93 F.3d at 723.

The Eleventh Circuit then turned to one of its previous cases: *Variety Children's Hosp., Inc. v. Century Medical Health Plan, Inc.*, 57 F.3d 1040 (11th Cir.1995). In *Variety*, the Eleventh Circuit held that state law fraud claims can be intertwined with benefit plans "where state law claims of fraud and misrepresentation are based upon the failure of a covered plan to pay benefits, the state law claims have a nexus with the ERISA plan and its benefit system." *Morstein*, 93 F.3d at 723 (quoting *Variety*, 57 F.3d at 1042.) The action in *Variety* was brought by a hospital, via an assignment of the claims of the parents of the beneficiary, against the plan itself and alleged that the plan had engaged in fraud an misrepresentation by allegedly denying coverage of an experimental bone marrow transplant performed at the hospital. *Id.* The Eleventh Circuit noted that these claims "involved ERISA entities,

the beneficiary before assignment, and the plan, and the state law claims were based on an interpretation of the plan's terms." *Id.* The court noted that "[w]hen a state law claim involves the reliance on an insurer's promise that a particular treatment is fully covered under a policy, however, a claim of promissory estoppel is not "related to" the benefits plan." *Id.* (citing *Variety*, 57 F.3d at 1043 and n. 5).

Turning again to Morstein's claims, the Eleventh Circuit noted that:

> Although the remedy sought may affect the plan in that Morstein's damages (should she successfully prevail on her claims) against Hankins and/or the Shaw Agency may be measured based on what she would have received under he old plan, such indirect relation between a beneficiary and the plan is not enough for preemption. *Forbus*, 30 F.3d at 1406–07 (noting that "the mere fact that the plaintiffs' damages may be affected by a calculation of pension benefits is not sufficient to warrant preemption"); *see also Smith v. Texas Children's Hosp.*, 84 F.3d 152, 155 (5th Cir.1996). The Supreme Court in [*New York Conference*] made it clear that economic impact alone is not necessarily enough to preempt a state law. [*New York Conference*, 514 U.S. at 668, 115 S.Ct. at 1683]. Therefore, the possibility that insurance premiums will be higher or that insurance will be more difficult to obtain because independent agents will have less incentive to sell insurance to employers whose employee benefit plans will be governed by ERISA, does not provide a reason to preempt state laws that place liability on agents for fraud. These same agents currently face the threat of state tort claims if they make fraudulent misrepresentations to individuals and entities not governed by ERISA. To hold these agents accountable in the same way when making representations about an ERISA plan merely levels the playing field.

Allowing preemption of a fraud claim against an individual insurance agent will not serve Congress's purpose for ERISA. As we have discussed, Congress enacted ERISA to protect the interests of employ-

ees and other beneficiaries of employee benefit plans. [*See Shaw*, 463 U.S. at 90, [103 S.Ct. 2890]]. To immunize insurance agents from personal liability for fraudulent misrepresentation regarding ERISA plans would not promote this objective. If ERISA preempts a beneficiary's potential cause of action for misrepresentation, employees, beneficiaries, and employers choosing among various plans will no longer be able to rely on the representations of the insurance agent regarding the terms of the plan. These employees, whom Congress sought to protect, will find themselves unable to make informed choices regarding available benefit plans where state law places the duty on agents to deal honestly with applicants.

*Morstein*, 93 F.3d at 723–24.

■ Turning to the facts presented in this action, the court must "look to see whether the state law claims brought by [Carroll] have a 'connection with' the ERISA plan. To determine that, [the court] examine[s] whether the claims brought fit within the scope of state law that Congress understood would survive ERISA." *Morstein*, 93 F.3d at 722.

To start, the court notes that in this action, the Plaintiff is "not seeking to obtain insurance benefits due her from [Blue Cross]. Instead, she is seeking to recover funds received by her from a settlement with a third-party tortfeasor's liability carrier and with her uninsured/underinsured motorist carrier but which the defendants wrongfully deprived her." (Pl.'s Mot. at 6, ¶ 8.). The Eleventh Circuit's holding in *Morstein* clearly states that "when a state law claim brought against a non-ERISA entity does not affect relations among principal ERISA entities as such, then it is not preempted by ERISA." *Id.* at 722. ERISA entities are defined as "the employer, the plan, the plan fiduciaries, and the beneficiaries under the plan." *Id.* Here, the employer is Techsonic. The Plan is the major medical insurance plan entered into between Techsonic and Blue Cross. The plan fiduciaries are either Blue Cross or Carroll's employer, Techsonic, not Flowers Hospital. Carroll is one of the beneficiaries. Finally, Flowers has "no control over the payments of benefits or a determination of [Carroll's] rights under the plan." *Morstein*, 93 F.3d at 723. Accordingly,

Flowers does not fall within any of the definitions of an ERISA entity outlined in *Morstein*.

■ ERISA preemption applies when the claims directly affect the relationship among the traditional ERISA entities outlined above, *Morstein*, 93 F.3d at 722; *Memorial Hospital Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245 (5th Cir.1990), and the state law claims asserted address areas of exclusive federal concern, such as the right to receive benefits under the term of an ERISA plan. *Memorial*, 904 F.2d at 245. Here, the state law claims asserted by Plaintiff affect relations between ERISA entities and an outside party, Flowers Hospital. *See Travitz*, 13 F.3d at 709 (cited with approval in *Morstein*, 93 F.3d at 722). And, Plaintiff is not suing an ERISA entity alleging failure to provide coverage under the terms of the Plan. *See Garren v. John Hancock Mutual Life Ins. Co.*, 114 F.3d 186, 187–88 (11th Cir.1997). Rather, the gravamen of her Complaint is that Flowers failed to comply with the terms of the service contracts; they do not relate to the payment of benefits under the Plan. Indeed the terms of the Plan, applicable between Blue Cross, Techsonic and Carroll are not implicated. Instead, a determination of the merits of Plaintiff's Complaint will require the court to analyze the terms of the service contracts between Blue Cross and Flowers, not the terms of the Plan. Thus, the court finds that Carroll's state law claims do not have a direct connection to the terms of the Plan. *Cf. Franklin v. QHG of Gadsden, Inc.*, 127 F.3d 1024, 1029 (11th Cir.1997)(finding ERISA preemption in opposite circumstances). Moreover, nor are Plaintiff's claims against Flowers "intertwined with [the] benefit plan[ ]." *Morstein*, 93 F.3d at 723. The state law claims raised here are not "based on an interpretation of the [P]lan's terms." *Id.* Consequently, the state law claims do not "have a nexus with the ERISA plan and its benefit system." *Id.* As Carroll argues, "[w]hen the defendants failed to submit a claim and, instead, sought to collect from or through Jan Carroll, the defendants created a hospital/patient relationship which had no ERISA connection." (Pl.'s Mot. at 7, ¶ 11.)

Finally, in *Morstein,* the court noted that the economic remedy sought there may affect the plan at issue. *Morstein,* 93 F.3d at 723. Nevertheless, the court found no ERISA preemption because "economic impact alone is not necessarily enough to preempt a state law." *Morstein,* 93 F.3d at 723 (citation omitted). The court noted that the insurance agents sued in *Morstein* "currently face the threat of state tort claims if they make fraudulent misrepresentations to individuals and entities not governed by ERISA. To hold these agents accountable in the same way when making representations about an ERISA plan merely levels the playing field." *Id.*

Similarly, the entity sued here currently faces the threat of the state law claims asserted by Carroll brought by non-ERISA entities. In other words, the Defendants can be held liable for tortious interference with business relations, conversion and the wrongful filing of liens, regardless of whether the putative plaintiff is covered by an ERISA plan. Those claims are not dependent on the Plan, rather they arise from the service contracts between Blue Cross and the Defendants. Indeed, the Defendants could enter into similar service contracts with non-ERISA entities and still be potentially liable for similar causes of action. Further, as Carroll notes:

> The present lawsuit can have no adverse impact on Jan Carroll's ERISA major medical plan or on the similar plans of the prospective class members. Blue Cross Blue Shield of Alabama was obligated to pay any claim submitted by Flowers Hospital for services rendered Jan Carroll and would be obligated to pay claims filed by class members. Blue Cross Blue Shield of Alabama based its premiums on its projection of having to pay such claims. Any monetary recovery realized in this lawsuit will be paid by QHG of Alabama and Quorum Health Group, and not Blue Cross Blue Shield. QHG of Alabama and Quorum Health Group will have no right to seek contribution or indemnity from Blue Cross Blue Shield of Alabama. Any injunctive relief will be directed to the defendants—instructing the defendants to comply with their contract with Blue Cross Blue Shield of Alabama and to timely sub-

mit claims to the insurer—and will not increase Blue Cross Blue Shield of Alabama's obligation to its insureds.

(Pl.'s Mot. at 7–8). As Plaintiff notes, not even the remedy sought affects the Plan or requires an interpretation of its terms.

Nevertheless, the Defendants argue that Plaintiff's claims are preempted, citing to the cases reiterating the broad scope of ERISA preemption. (Def.'s Resp. at 2–4.) Defendants dismiss Plaintiff's argument that she is not seeking benefits under the Plan, that the Defendants are not the Plan's "insurers/underwriters" or "administrators/managers," and that "the present lawsuit can have no adverse impact on" the Plan as irrelevant and insignificant. (Def.'s Resp. at 4–5 (citing Pl.'s Mot. ¶ 7).) According to the Defendants, "[t]o determine that this action is preempted by ERISA, this Court need only find that the Plaintiff's claims have "a connection with or reference to" an ERISA plan." (*Id.* at 5.) Notably, the Defendants fail to address *Morstein* directly. Rather, the only support they cite is *Cavender v. East Alabama Medical Center,* CV 96–A–239–E, (Oct. 23, 1996 M.D.Ala.1996), an unpublished slip opinion issued by Judge Albritton of this court, in which *Morstein* is addressed. *Cavender* is distinguishable on several grounds.

In *Cavender,* the plaintiff, Louise Cavender, had medical coverage under a plan sponsored by her current employer, as well as COBRA continuation coverage under a plan sponsored by her previous employer. Each plan was administered by a separate Blue Cross entity (referred to as "Blue Cross"). In October of 1992, Cavender received treatment for a medical condition at the East Alabama Medical Center ("EAMC"). She alleged that "after she was treated, EAMC either failed to submit a claim on her behalf to [Blue Cross] or erroneously submitted a claim for benefits to [Blue Cross]." *Id.* at 2. The *Cavender* court described the action as arising "from the alleged improper denial of a claim for benefits under an employee health benefit plan." *Id.*

EAMC argued that Blue Cross instructed it to submit Cavender's claim through the Interplan Bank—a system utilized by Blue

Cross to enable local carriers to process the claims of subscribers to out-of-state plans. *Id.* EAMC argued that when it did so, the claim was rejected due to an invalid identifying prefix. *Id.* At the instruction of Blue Cross, it resubmitted the claim under Cavender's social security number without any identifying prefix. Blue Cross eventually processed the claim and denied coverage because Cavender's insurance did not cover preexisting conditions. *Id.* at 2–3.

Plaintiff argued that in February of 1995, she and EAMC learned for the first time that the denial of coverage pertained only to one of her two policies, and that the claim had never been submitted under the other policy. *Id.* at 3. The claim was then submitted under the other policy, and Blue Cross declined to pay, "despite being informed of the processing mistakes, because the claim had been submitted too late." *Id.*

Cavender then sued EAMC and the Blue Cross entities alleging that EAMC was negligent or wanton in failing to properly submit her claims, and failing to inform her that her claims had not been properly submitted. *Id.* She also alleged that Blue Cross recklessly or innocently made a false representation to her, negligently or wantonly failed to properly process and pay her claim, and that it was negligent or wanton in failing on a continuing basis to inform her that her claim had not been properly filed. Id. Finally, she alleged that Blue Cross breached its contract with Cavender by failing to pay her benefits claim when it was submitted. *Id.* at 4. She further alleged that as a result of these actions, her medical and hospital bills had not been paid; she had been subjected to continuous collection efforts; and that she had suffered emotional distress. *Id.*

The case was before the court on a motion to remand, *id.,* which the court denied because it found that all of Cavender's claims fell under ERISA preemption, and, consequently, fell within the court's federal question jurisdiction. *Id.* at 7. In so finding, the court analyzed Cavender's claims under *Morstein,* and found it inapplicable because the claims against EAMC, (which was assumed to be a non-ERISA entity), affected the relationship between Cavender and Blue Cross—two of the principal ERISA entities. *Id.* at·

11. The court noted that under the facts before it:

> [T]he Plaintiff's insurer, [Blue Cross], had a duty to pay her claim for benefits if the claim was properly submitted. The claim was rejected by [Blue Cross], however, because it was submitted too late. If, as the Plaintiff asserts, the claim was untimely submitted due to the negligence of EAMC, then the negligent acts or omissions of EAMC had the effect of altering the relationship between the Plaintiff and [Blue Cross] by releasing [Blue Cross] from its duty to pay the Plaintiff's claims for benefits.

*Id.* at 11. The court further noted *Morstein*'s language finding no ERISA preemption because the defendants there "had no control over the payment of benefits ... under the plan." *Id.* at 12 (citing *Morstein,* 93 F.3d 715, 722). The court construed Cavender's complaint as stating that EAMC:

> effectively exerted control over the payment of benefits under the plan through its negligent acts and omissions. By failing to submit the Plaintiff's claim properly and by failing to inform the Plaintiff that the claim had not been properly submitted, EAMC caused the Plaintiff to waive her right to receive payment under the plan. Accordingly, this case is distinct from the limited holding of *Morstein,* and the claims remain preempted by ERISA.

*Id.* at 12.

The court also noted that "an interpretation of the terms of the plan is essential to a determination of damages under those claims." *Id.* at 13. The court found that "[i]f [Blue Cross's] failure to pay her claim for benefits is attributable to the negligence of EAMC, then, in order to recover for the lost coverage, the Plaintiff must prove the amount of coverage that, but for EAMC's negligence, she would have received." *Id.* The court noted *Morstein*'s holding that such a connection to an ERISA plan alone is insufficient to warrant ERISA preemption. *Id.* (citing *Morstein,* 93 F.3d 715, 722 ("Such an indirect relationship between a beneficiary and the plan is not enough for preemption")). Nevertheless, the court found that "as an additional connection between Cavender's

claims and the [Blue Cross] plan, it militates in favor of preemption in this case." *Id.* at 13.

As a threshold matter, the court notes the distinction between the facts and claims asserted in *Cavender* and the facts and claims asserted in this action. First, Carroll, the Plaintiff here, never alleged that her benefits were improperly denied because of the negligence or wantonness of Flowers and/or Blue Cross. In contrast, the plaintiff in Cavender asserted just that; she alleged that "after she was treated, EAMC either failed to submit a claim on her behalf to [Blue Cross] or erroneously submitted a claim for benefits to [Blue Cross]." *Cavender,* slip op. at 2. This action is unlike the *Cavender* action in that it did not arise "from the alleged improper denial of a claim for benefits under an employee health benefit plan." *Id.*

Here, Flowers *never submitted* claims to Blue Cross that were rejected. *Cf. Id.* at 2–3. Rather, Carroll alleges that "the defendants intentionally treated Jan Carroll as if she was uninsured and as if a third-party tortfeasor would be made to pay for her treatment at Flowers Hospital." (Pl.'s Reply at 4.) In *Cavender,* EAMC submitted claims that were rejected by Blue Cross because they were filed "too late," despite the fact that Blue Cross was informed of processing mistakes. *Id.* at 3. One of Cavender's allegations was that Blue Cross breached its contract with her by failing to pay her claim, *id.* at 4, an allegation not asserted in the instant action. Further, the *Cavender* court based its holding primarily on the fact that if the claim was untimely submitted by EAMC, as Cavender alleged, then EAMC's actions had the effect of altering the relationship between Cavender and Blue Cross by releasing Blue Cross from its duty to pay her claim for benefits. *Id.* at 11. Here in contrast, there is no indication that Blue Cross has been released from any of its duties; Flowers never submitted a claim to Blue Cross, either timely or untimely. Consequently, the *Cavender* court's finding that EAMC "effectively exerted control over the payment of benefits under the plan through its negligent acts or omissions" is inapplicable under the facts of this action. *Cf. id.* at 12 (citing *Morstein,* 93 F.3d 715, 722 (finding no ERISA preemption because the defendants there "had no

control over the payment of benefits ... under the plan")).

Finally, the *Cavender* court found that the fact that an interpretation of the terms of the plan was essential to a determination of the damages under Cavender's claims. *Id.* at 13. Although noting that this issue was not dispositive under *Morstein,* the court found that it militated in favor of ERISA preemption in *Cavender* as an additional connection between Cavender's claims and the Blue Cross Plan. *Id.* Here, in contrast, the Plan administered by Blue Cross is not implicated; rather, Carroll's complaints arise under the service contracts between Flowers and Blue Cross. Carroll sues, in part, for the recovery of insurance proceeds garnered from her accident, not for out-of-pocket payments or other expenses that allegedly should have been covered by her Plan wrongfully sought from her by Flowers. Admittedly such an action could arise in the future; however it is not brought here.

## III. Conclusion

The court finds the claims asserted here "too tenuous, remote, or peripheral" to warrant a finding of ERISA preemption. *See Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. 2890. Carroll's claims are not based on an alleged improper processing of a claim for benefits, *see Pilot Life,* 481 U.S. at 48, 107 S.Ct. 1549, nor do they require an inquiry into the Plan. *See McClendon,* 498 U.S. at 140, 111 S.Ct. 478. Consequently, the court concludes that Carroll's allegations do not "relate to," nor do they have a "connection with" the Plan, as those terms have been interpreted by the Supreme Court and the Eleventh Circuit. *See New York Conference,* 115 S.Ct. at 1677–80; *Morstein,* 93 F.3d at 722–24.

Allowing preemption of Plaintiff's tortious interference, conversion, and wrongful filing of liens claims will not serve Congress's purpose for ERISA. *Morstein,* 93 F.3d at 723. As the *Morstein* court noted, "Congress enacted ERISA to protect the interests of employees and other beneficiaries of employee benefit plans." *Id.* To immunize Flowers from liability for alleged torts arising separate and apart from Carroll's insurance Plan administered by Blue Cross will not support

**1314**

Congress's objective in passing ERISA. Rather, it will allow health care providers such as Flowers to wrongfully seek potentially greater recoveries from liability carriers rather than the recoveries contemplated in their service contracts with insurers at the expense of health care consumers reliant upon both providers and insurers for the expeditious and efficient furnishing of medical care and insurance coverage. If ERISA preempted such claims as asserted here, health care consumers will no longer be able to rely on the representations of health care providers, (identified as providers under the terms of a consumer's plan), that the costs of their treatment will properly be billed to their insurance provider rather than such costs being sought in the form of hospital liens, or other actions against the consumer. Those consumers will find themselves unable to make informed choices regarding "trustworthy" health care providers, where state law places the duty on these providers to abide by their previous agreements to comply with the terms of those agreements, including the submission of claims for treatment, in the first instance, to the insurer. *See generally, Morstein*, 93 F.3d at 723–24. This court lacks jurisdiction over Carroll's claims, as they are not ERISA preempted.

**IV. Order**

Because the court finds that it has no jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 (federal question), it is hereby CONSIDERED and ORDERED that Plaintiff's Motion To Remand be and the same is hereby GRANTED. Accordingly, the court has no jurisdiction to decide Defendant's Motion To Dismiss. The Clerk of the Court is DIRECTED to take all steps necessary to effectuate remand of this action to the Circuit Court of Houston County, Alabama.